UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATTHEW RAY THOMPSON, JR., § | |
|     *Plaintiff* § | |
| § | |
| v. § | Civ. Action No.: |
| § | |
| ANTHONY G. BUZBEE and § | |
| ANTHONY G. BUZBEE LP § | |
| (d/b/a THE BUZBEE LAW FIRM), § | |
|     *Defendants* § | |

## COMPLAINT

Plaintiff Matthew Ray Thompson, Jr., by and through undersigned counsel, files this Complaint against Defendants Anthony G. Buzbee ("Tony Buzbee") and Anthony G. Buzbee LP (d/b/a The Buzbee Law Firm) ("The Buzbee Firm" or "Firm").

### I. INTRODUCTION

1. Tony Buzbee is a bombastic attorney in Houston, Texas, who is fond of saying "sunlight is the best disinfectant." Notwithstanding his professed love for transparency, Mr. Buzbee and The Busby Law Firm used their attorney-client relationship with Plaintiff Matthew Ray Thompson Jr. to take over 60% of Mr. Thompson's Jones Act settlement; to enrich themselves at Mr. Thompson's expense by fraudulently overstating case expenses; and to further enrich themselves by converting to their own use maintenance-and-cure funds intended to provide living and medical expenses for Mr. Thompson and his family while he was injured. Defendants received these funds on behalf of Mr. Thompson and then, based on information and belief, loaned the funds back to Mr. Thompson at high interest rates through Venmo transactions a family members. At the conclusion of his case, Defendants presented Mr. Thompson with a settlement statement that should have disclosed in detail all the fees and expenses Mr. Thompson was being charged. Instead, The Buzbee Law Firm's settlement statement does little to disclose where more than 63%

of Mr. Thompson's recovery went. To obfuscate, the statement uses vague descriptions, scant detail and no documentation. For example, Defendants required Mr. Thompson to travel from Louisiana to Texas repeatedly to see Defendants' hand-picked doctors. As a result, Mr. Thompson incurred thousands in unnecessary travel and medical expenses which show up on the settlement statement in various vague descriptions of travel, loans, and other expenses. Mr. Thompson brings this action to recover the funds fraudulently withheld from him and converted by Defendants for their own use and enrichment.

## II.   PARTIES

2.   Plaintiff MATTHEW RAY THOMPSON, JR. is citizen of the State of Louisiana who resides in Jefferson Parish, Louisiana.

3.   Defendant ANTHONY G. BUZBEE is a citizen of Texas who, on information and belief, resides in Harris County, Texas.

4.   Defendant ANTHONY G. BUZBEE L.P. (d/b/a The Buzbee Law Firm) is a law firm that is organized under the laws of State of Texas and that operates its principal place of business from Harris County, Texas. No members of The Buzbee Law Firm's limited partnership reside in the State of Louisiana.

## III.   JURISDICTION & VENUE

5.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of Louisiana, Defendants are citizens of Texas, and the amount in controversy exceeds $75,000 exclusive of costs and interest. Defendants have sufficient "minimum contacts" with the State of Louisiana including: (i) Defendants first contacted Mr. Thompson in the State of Louisiana for the purpose of soliciting him as their client; (ii) Defendants mailed and emailed a contract for employment of attorney to Mr. Thompson in Louisiana; (iii) Defendants insisted that Mr. Thompson use a notary of the State of Louisiana to sign documents sent to him in the State of

2

Louisiana; (iv) Defendants intercepted and converted maintenance and cure payments intended for Mr. Thompson in Louisiana; and (v) Defendants used Venmo to make a dozen or so individual loans to Mr. Thompson and his family in the State of Louisiana.

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

## IV. FACTS

**A. Buzbee uses his notoriety to lure vulnerable clients to The Buzbee Firm**

7. Defendants rely on Buzbee's quasi-celebrity status to lure Louisiana residents, such as Mr. Thompson, to The Buzbee Firm. Buzbee's fame, however, is reflected, at best. Buzbee and his Firm have become famous by making salacious accusations against prominent members of society. Buzbee has become rich by milking settlements with threats of negative attention from people who rely on their public reputations for livelihood. Mr. Thompson, who has worked as a deckhand much of his adult life, was impressed by Mr. Buzbee's public persona, so he hired him as his lawyer.

**B. Buzbee brought none of his glitz and bravado to Mr. Thompson's case**

8. In July 2023, Mr. Thompson was a deckhand on a vessel that struck a barge in the Houston Ship Channel. Mr. Thompson suffered head, neck, and back injuries.

9. In November 2023, The Buzbee Law Firm filed a lawsuit on Mr. Thompson's behalf against Strategic Towing Services, LLC ("Strategic Towing"), owner of the vessel that Mr. Thompson was on when he was injured.[1] As a "Jones Act Seaman," Mr. Thompson was entitled to receive monthly maintenance-and-cure payments while his lawsuit was pending regardless of the merits of his claim or outcome of the suit. Based on information and belief, The Buzbee Firm

---

[1] *See Thompson v. Strategic Towing Servs., LLC, et al.*, 2023-79012, 164th Dist. Court of Harris County, Tex. (Nov. 13, 2023) (the "Texas Lawsuit").

directed Strategic Towing to make Mr. Thompson's maintenance and cure checks payable to The Buzbee Firm and/or deposited Mr. Thompson's checks in its operating account rather than its IOLTA trust account. Undoubtedly, Mr. Thompson and his family did not receive the maintenance and cure funds to which Mr. Thompson was entitled.

**C.   Defendants loaned Mr. Thompson his own money in the form of high interest loans**

10.   In addition to misappropriating Mr. Thompson's maintenance and cure funds that were intended to provide living expenses for he and his Family, Defendants used Mr. Thompson's benefits for their own gain. Specifically, rather than giving Mr. Thompson these funds, Defendants used Venmo to parse these funds out to Mr. Thompson and his wife in small amounts as high interest loans. Specifically, December 10, 2023 "for traveling," January 23, 2024 "travel for Matthew," January 19, 2024 "relocation loan," August 15, 2024 "travel loan," and September 16, 2024 "travel loan." Defendants recovered these "loans" from Mr. Thompson, which was his money to begin with, plus interest. On information and belief, Defendants had a pattern of doing the same thing with other clients.

11.   Based on information and belief, Defendants used Venmo to disburse "loans" to clients to sidestep the Rules of Professional Conduct and to conceal the fraudulent nature of these transactions. Defendants used vague or fraudulent descriptions of expenses in their settlement statements to conceal their inflated nature. With Mr. Thompson, Defendants took more than 63% of Mr. Thompson's recovery. Defendants demanded that Mr. Thompson travel from Louisiana to Texas multiple times to see doctors hand-picked by Defendants. In doing so, Defendants inflated expenses, which then were concealed in a settlement statement with scant, if any, description of the medical care Mr. Thompson received in Texas. Based on information and belief, Defendants have employed the same or similar tactics in other cases involving injured seamen.

**D.  Buzbee and his Firm have preyed on other injured seamen including by misappropriating their maintenance and cure payments**

12. Buzbee's client Guadalupe Garza was injured while working on a vessel owned by Callan Marine, Ltd. ("Callan Marine"). Buzbee sued Callan Marine in Nueces County, Texas. Under federal law, Mr. Garza was entitled to receive maintenance and cure payments during the pendency of his case. However, Callan Marine, like Strategic Towing, was instructed to make payments to The Buzbee Law Firm. Mr. Garza, Buzbee's client, claims he never received his payments. *See Garza v. Callan Marine, Ltd.*, 2020CCV-61002-3, Nueces County, Tex.

13. Buzbee, rather than leaping at the first opportunity to prove Garza's allegations wrong, opposed subpoenas issued by Callan Marine seeking records to show what happened to Mr. Garza's maintenance-and-cure payments. At a hearing, Callan Marine's counsel stated: (a) in addition to Mr. Garza, other Buzbee clients have not received Callen Marine's maintenance-and-cure payments; (b) according to records, Buzbee and his Firm deposited maintenance-and-cure payments into the Firm's business account rather than its trust account; and (c) The Buzbee Law Firm often lends money to its clients, apparently repackaging the client's own maintenance-and-cure funds into a loan that must be repaid with interest.

14. In another case in Nueces County, Texas, in 2023, Callan Marine moved to designate Buzbee, The Buzbee Law Firm, and Chris Leavitt (an attorney at The Buzbee Law Firm) as responsible third parties for funds paid to the Firm's client, Laquille Tyner. *See Tyner v. Callan Marine, Ltd.*, 2020CCV-61393-2, Nueces County, Tex. As stated in Callan Marine's motion:

> In connection with these contested allegations, but in compliance with its obligations under the [Jones] Act, Defendant, Callan paid maintenance and cure payments to the Anthony G. Buzbee, LP (the "Buzbee Firm"). These funds, which even included some of Mr. Tyner's unearned advances, were paid to the Buzbee Firm because that was following their demand. Callan was unaware that they were not getting the credit that was due or that these payments were being

5

converted by the Buzbee firm to appear as tokens of their own generosity. It is clear that Mr. Tyner alleges in his pleading that he did not receive all funds he thought were due from Callan and that he was harmed by the conduct. What Mr. Tyner did not know was that it was his own lawyers that were intercepting the funds and that his own attorney failed to place them in an IOLTA account. Even worse, these same attorneys have attempted to conceal their own shameful conduct and transform it into a larger damage award for their client. It was the conduct of the Responsible Third Parties that created the lawyer induced disappointment of Mr. Tyner in his employer Callan. It was these same lawyers, and this law firm, who failed to protect said funds in an IOLTA account or distribute them properly to Mr. Tyner.

15. Based on information and belief, Mr. Thompson and his family are similar victims of the same pattern of abuse and unethical conduct by Buzbee and The Buzbee Law Firm.

**E.    Buzbee's pattern of abuse is not limited to vulnerable seamen**

16. Buzbee's misconduct and abuse are not limited to vulnerable injured seamen.

*Allegedly Assaulting Client*

17. On November 19, 2024, a former Buzbee Law Firm client filed suit against Buzbee alleging that, while Buzbee was representing her during her divorce proceedings, he flew into a fit of rage and physically assaulted, leaving her with a chipped tooth. Following the assault, Buzbee focused more on concealing his actions than safeguarding his client's interests in the divorce action.[2]

---

[2] *Attorney Repping Alleged Victims Sued for Assault*, Nov. 21, 2024, https://www.tmz.com/2024/11/21/diddy-attorney-tony-buzbee-sued-accused-of-assault/ ("[S]he is alleging she was in a public place when Buzbee saw her, flew into a 'fit of rage' and allegedly pushed a champagne flute into her face, chipping her tooth. She says she has both medical and dental records to prove her injuries. . . . The woman's lawyer, Jeremy Bohrer, tells TMZ, 'Tony Buzbee is a hypocrite. There is nothing worse than when a black hat masquerades as a white hat.'").

### *Allegedly Providing Financial Incentives to a Known Witness*

18. In *Haywood v. Univ. of Pittsburgh*, No. 11-1200, 2012 U.S. Dist. LEXIS 179045, at *2, a federal court invalidated Buzbee's referral agreement as "invalid as a matter of public policy."

### *Allegedly Submitting Incorrect or Fraudulent Evidence*

19. In *In re Lowe's Home Ctrs., LLC*, 531 S.W.3d 861 (Tex. App. 2017), Buzbee was accused of submitting a "venue pleadings and [his client's] affidavit" that were "at best, incorrect, and at worst, fraudulent." *See In re Lowe's Home Ctrs., LLC*, 531 S.W.3d 861 (Tex. App. 2017). To avoid the consequences of his misconduct, Buzbee unilaterally nonsuited the case and refiled it elsewhere.

## V.  CAUSES OF ACTION

### Count I: Breach of Fiduciary Duty
### (Against All Defendants)

20. Plaintiff incorporates paragraphs 1 through 21 by reference, as if restated fully herein.

21. Mr. Thompson had an attorney-client relationship with Defendants. As his attorneys, Defendants promised to represent Mr. Thompson with loyalty and care and to help him recover physically and financially from the injury he suffered as a Jones Act Seaman. The special relationship gives the attorney insight and control over the client's life that renders him vulnerable, which is why ethics rules and applicable law require undivided loyalty to the client.

22. For example, Defendants knew that Plaintiff struggled with opioid addiction and was wholly dependent on The Buzbee Law Firm to made decisions regarding the litigation that were in the best interests of Mr. Thompson and his family.

7

23. Defendant Buzbee and The Buzbee Law Firm owed Mr. Thompson duties of care and loyalty that included safekeeping of funds recovered on his behalf in a trust account, or immediate dispersal of funds paid to Mr. Thompson to cover living expenses for he and his family.

24. Defendants breached their fiduciary duties to Mr. Thompson including by commingling his funds with their operating funds; and by misappropriating his funds for their own benefit, and by converting his funds to their own use and by charging Mr. Thompson interest on these funds to his detriment.

25. Defendants made these loans to Mr. Thompson's family members, rather than Mr. Thompson himself, to sidestep safeguards in Rules of Professional Conduct 1.4, 1.5, and 1.8, which are expressly intended to protect vulnerable clients like Mr. Thompson.

26. Defendants breached their fiduciary duties to Mr. Thompson, as described herein, and as will be proved in discovery and at trial, and damaged Mr. Thompson by denying him maintenance and cure, charging him interest on his own funds, inflating case expenses, requiring him to incur unnecessary travel and medical expenses, and other amounts that will be proven at trial.

### Count II: Fraud (Louisiana Law – La. Civ. Code 1953)
**(Against All Defendants)**

27. Plaintiff incorporates paragraphs 1 through 28 by reference, as if fully restated herein.

28. Under federal maritime law, Strategic Towing, Mr. Thompson's employer, owed him maintenance-and-cure payments during the pendency of this injury and lawsuit.

29. Defendants misappropriated Mr. Thompson's maintenance-and-cure payments from Strategic Towing by directing these payments to The Buzbee Law Firm, depositing them into The Buzbee Law Firm's operating account, issuing them to Mr. Thompson as high interest loans, and recover both principal and interest from Mr. Thompson at the conclusion of his case. All the

while, Mr. Thompson and his family's living were left unpaid. While he was represented by Buzbee and The Buzbee Law Firm, Mr. Thompson struggled with rent, groceries, utilities, gas and other expenses that maintenance-and-cure were expressly intended to cover.

30. Mr. Thompson has been damaged by Defendants' misappropriation and misuse of Defendants have concealed from Mr. Thompson the amount of maintenance-and-cure payments that Strategic Towing made on Mr. Thompson's behalf, the manner in which these funds were used, and the amount to which Mr. Thompson was entitled. These amounts of damage will be proven in discovery and at trial.

## Count III: Conversion
### (Against All Defendants)

31. Plaintiff incorporates paragraphs 1 through 32 by reference as if restated fully herein.

32. In the Texas lawsuit, Defendants were pursuing recovery for Mr. Thompson's injuries sustained while working as a Jones Act Seaman. Plaintiff was entitled to receive maintenance-and-cure payments from non-party Strategic Towing during the pendency of that lawsuit. Based on information and belief, Strategic Towing made maintenance-and-cure payments to The Buzbee Law Firm on behalf of Mr. Thompson. These maintenance-and-cure payments were intended by Strategic Towing to provide for Mr. Thompson's living expenses and medical care while he was pursuing his lawsuit. Defendants were entrusted with the payments as Mr. Thompson's attorneys and were obligated to pass these payments on to Mr. Thompson so they could be used for their intended purpose – to provide for Mr. Thompson and his family while he was injured.

33. Based on information and belief, Defendants failed to deposit Mr. Thompson's maintenance-and-cure payments in a segregated IOLTA trust account, as required by Rules of Professional Conduct but rather deposited these funds in The Buzbee Law Firm's operating

account for its own use and benefit including loaning Mr. Thompson's funds back to him with interest. Defendants, without any claim of title or ownership, continued to withhold and use these funds for its own benefit throughout Mr. Thompson's lawsuit despite his repeated demands to release the maintenance-and-cure payments that had been paid for his benefit.

## VI.  JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

## VII.  REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Matthew Ray Thompson, Jr. prays for judgment against Defendants Anthony G. Buzbee and Anthony G. Buzbee L.P. (d/b/a The Buzbee Law Firm) including the following relief:

A judgment in favor of Plaintiff and against Defendants on all counts including an award of Plaintiff's actual damages, punitive damages, statutory damages, reasonable and necessary attorneys' fees, expert fees, and court costs; and all other relief in favor of Plaintiff that the Court may deem appropriate.

Dated: December 9, 2024.

Respectfully submitted,

MATTHEW RAY THOMPSON, JR.

By: /s/ *Timothy W. Porter*
Tim Porter, La. Bar No. 24863
PORTER MALOUF, P.A.
825 Ridgewood Road
Ridgeland, MS 39157
Telephone: (601) 957-1173
Facsimile:  (601) 957-7366
tim@portermalouf.com

OF COUNSEL:

Kelley Berry (Lead Counsel)
(Pro Hac Pending)
BERRY & MUNN, P.A.
P.O. Drawer 768
201 Downing Street
Hazlehurst, MS 39083
(601) 894-4150
kberry@berrymunnpa.com

Tim Porter, La. Bar No. 24863
PORTER MALOUF, P.A.
825 Ridgewood Road
Ridgeland, MS 39157
Telephone: (601) 957-1173
Facsimile:  (601) 957-7366
tim@portermalouf.com