UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MATTHEW RAY THOMPSON, JR.**                          **CIVIL ACTION**

**VERSUS**                                                              **NO. 24-2827**

**ANTHONY G. BUZBEE, ET AL.**                         **SECTION "O"**

**ORDER AND REASONS**

Before the Court in this lawyer-client dispute is the motion[1] of Defendants Anthony G. Buzbee and Anthony G. Buzbee LP (together, "Buzbee") for a stay pending arbitration under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. Plaintiff Matthew Ray Thompson, Jr., sued Buzbee for misappropriating maintenance-and-cure payments from the settlement of a Jones Act suit Buzbee brought on Thompson's behalf. A "Power of Attorney and Contract of Employment" governed Buzbee's representation of Thompson.[2] That representation contract contains an arbitration provision governed by Texas law; under it, Thompson "agree[d] that any dispute whatsoever arising out of this agreement, including disputes regarding fees or the proper and reasonable rendition of legal services, will be resolved by arbitration . . . ."[3] Buzbee contends that the Court should stay this case pending arbitration under that provision. Thompson rejoins that the arbitration provision is illusory because it creates a one-sided obligation to arbitrate; that his claims do not come within the arbitration provision's scope; and that Buzbee waived the right to arbitrate by moving to strike his complaint and to sanction his counsel.

---

[1] ECF No. 6.
[2] ECF No. 6-2.
[3] *Id.* at 4.

But Thompson is incorrect on all counts. The arbitration provision is enforceable under Texas law. Even assuming the arbitration provision is one-sided, it is still not unenforceable as illusory because it is part of a broader representation contract that is supported by consideration. And Thompson's claims come within the arbitration provision's scope: The core factual allegations underlying Thompson's claims arise from Buzbee's representation of Thompson under the terms of the representation contract. What is more, Buzbee did not waive his right to seek a stay pending arbitration by moving to strike portions of Thompson's complaint and moving to sanction Thompson's counsel after moving for a stay. Finally, Thompson identifies no statute, policy, or other defense that makes his claims nonarbitrable. Accordingly, for these reasons and those that follow, Buzbee's motion to stay is **GRANTED**.

## I.   BACKGROUND

Thompson suffered personal injuries while working as a deckhand for Strategic Towing Services, LLC aboard a vessel that struck a barge.[4] He hired Buzbee to sue Strategic Towing under the Jones Act.[5] A "Power of Attorney and Contract of Employment" governed Buzbee's representation of Thompson in that case.[6]

Under that representation contract, Thompson agreed to pay Buzbee a percentage of any recovery "[a]s compensation for the services to be provided by" Buzbee "in the prosecution of" Thompson's claim.[7] The representation contract is

---

[4] ECF No. 1 at ¶¶ 8–9.
[5] *Id.* at ¶ 9; *see also* ECF No. 6-2 at 1–5.
[6] ECF No. 6-2 at 1–5.
[7] *Id.* at 1.

2

governed by Texas law[8] and contains an arbitration provision that states in relevant part that "Client agrees that any dispute whatsoever arising out of this agreement, including disputes regarding fees or the proper and reasonable rendition of legal services, will be resolved by arbitration, to take place in Harris County."[9]

After Thompson's case against Strategic Towing settled, Thompson sued Buzbee to recover settlement funds he says Buzbee "fraudulently withheld . . . and converted . . . for [Buzbee's] own use and enrichment."[10] Thompson generally alleges that Buzbee misappropriated his maintenance-and-cure payments from Strategic Towing; commingled those payments with operating funds; "loaned" those payments back to Thompson and members of Thompson's family at high interest rates; and inflated case expenses.[11] Based on these allegations and others, Thompson brings causes of action against Buzbee for breach of fiduciary duty, fraud, and conversion.[12]

Now, Buzbee invokes the representation contract's arbitration provision and moves the Court to stay these proceedings pending arbitration under Section 3 of the FAA.[13] Thompson opposes.[14] After moving for that Section 3 stay, Buzbee moved to strike portions of Thompson's complaint and to sanction Thompson's counsel.[15]

---

[8] *Id.* at 4.
[9] *Id.*
[10] ECF No. 1 at ¶ 1.
[11] *Id.* at ¶¶ 1, 9, 10, 24, 26, 29.
[12] *Id.* at ¶¶ 20–26; *id.* at ¶¶ 27–30; *id.* at ¶¶ 31–33.
[13] ECF No. 6.
[14] ECF No. 17.
[15] ECF No. 6; ECF No. 7.

## II. ANALYSIS

The Court stays all proceedings in this case pending arbitration under Section 3 of the FAA because the representation contract's arbitration provision is a valid agreement to arbitrate; all of Thompson's claims come within that provision's broad scope; and no statute, policy, or other defense makes Thompson's claims nonarbitrable.

Section 3 of the FAA is straightforward: If "any issue" is "referable to arbitration" under a written agreement to arbitrate, the Court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. The "plain statutory text" of Section 3 of the FAA "requires" the Court to "stay [this] proceeding" if "any issue" must be arbitrated. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (citation omitted). But deciding if a Section 3 stay must be entered requires resolving an antecedent question: Did Thompson and Buzbee validly agree to arbitrate this dispute? *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530–32 (5th Cir. 2019).

The Court answers that question in three steps. First, the Court asks if the arbitration provision is a valid agreement to arbitrate. *See Polyflow, L.L.C. v. Specialty TRP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021). Second, the Court asks if this case comes within that provision's scope. *See id.* Finally, the Court asks if any statute, policy, or other defense makes Thompson's claims nonarbitrable. *See id.*

### A. The Arbitration Provision is a Valid Agreement to Arbitrate.

The arbitration provision is a valid agreement to arbitrate under Texas law. The Court applies "ordinary principles of state contract law" to decide if the arbitration provision is a valid agreement to arbitrate. *Halliburton*, 921 F.3d at 530 (citations omitted). Texas law controls.[16] As the party seeking a stay, Buzbee has the initial burden to show that the arbitration provision is a valid agreement to arbitrate under Texas law. *See Halliburton*, 921 F.3d at 530. Buzbee meets that burden because he offers a copy of the arbitration provision.[17] *See Yanez v. Dish Network*, 140 F.4th 626, 630 (5th Cir. 2025) (applying Texas law) (citation omitted). Because Buzbee presents "competent evidence showing the formation of an agreement to arbitrate," Thompson "must produce some contrary evidence to put the matter in issue." *Id.* at *3 (quotation, alterations, and citation omitted). He fails to do so.

Thompson chiefly contends that the arbitration provision is illusory and unenforceable because it is one-sided. On his reading, the arbitration provision requires only him to arbitrate and leaves Buzbee free to litigate or arbitrate. Even assuming Thompson's reading is right, the arbitration provision still is not illusory. "Promises are illusory and unenforceable if they lack bargained-for consideration because they failed to bind the promisor." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015) (citation omitted). But "[t]he mere fact that

---

[16] No party contests the application of Texas law or the enforceability of the Texas choice-of-law provision for purposes of this motion. ECF No. 6-2 at 4; *see Stancu v. Starwood Hotels & Resorts Worldwide, Inc.*, 672 F. App'x 362, 366 n.12 (5th Cir. 2016) (per curiam) (enforcing Texas choice-of-law provision where no party disputed its validity); *Matter of Amberson*, 54 F.4th 240, 248 (5th Cir. 2022) ("Generally, a court may accept the parties' agreement on the applicable law." (citation omitted)).

[17] ECF No. 6-2 at 1–5.

an arbitration provision is one-sided does not make it illusory." *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 76 (Tex. App.—Hous. [14th Dist.] 2016, no pet.) (citations omitted). "[A]rbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 223 (Tex. 2008) (citation omitted). True, "[i]n the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (citation omitted). "But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *Id.* (citation omitted).[18]

That is the case here. The arbitration provision does not stand alone; it is part of the representation contract. No party contends that the representation contract lacks consideration. Nor could they: Under the representation contract, Thompson

---

[18] *See also, e.g.*, *In re AdvancePCS Health L.P.*, 172 S.W.3d at 607 (holding that arbitration provision was not illusory despite one party's right to cancel the provision at will because the provision was "part of an underlying contract" and reasoning that nonmovants could not "claim their agreement to arbitrate was without consideration" because they "used [movant's] services" for years); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676–77 (Tex. 2006) (holding that arbitration provision was not illusory despite one party's right of opt out because the provision "was part of a larger contractual relationship" that was itself supported by consideration); *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 854 (Tex. App.—Hous. [1st Dist.] 2012, pet. dism'd) (rejecting argument that one party's promise to arbitrate claims "at [its] option" made an arbitration provision illusory because the provision was "part of an underlying contract" that provided the requisite consideration); *Leyendecker Constr., Inc. v. Berlanga*, No. 04-13-95, 2013 WL 4009752, at *2–3 (Tex. App.—San Antonio Aug. 7, 2013, no pet.) (rejecting argument that arbitration provision allowing one party to require arbitration "at its sole option" made the provision illusory because the provision "was part of a larger, underlying contract" that provided the requisite consideration); *Tanoury v. Symphony Serv. Corp.*, No. 3:12-CV-1142, 2013 WL 705121, at *4 (N.D. Tex. Feb. 5, 2013) (Ramirez, M.J.) (finding it "unnecessary" to decide if the parties "were mutually bound by their promises to arbitrate because the underlying agreement . . . provides the required consideration for the arbitration clause") *adopted by* 2013 WL 706048 (N.D. Tex. Feb. 27, 2013); *Kirkham v. TaxAct Inc.*, No. 24-1515, 2025 WL 914307, at *3 (3d Cir. Mar. 26, 2025) (concluding, under Texas law, that "the proposition that the arbitration provision remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate" did not apply because the arbitration agreement did not stand alone (citation and quotation omitted)).

6

promised to pay Buzbee a percentage of any recovery on his claim against Strategic Towing; in exchange, Buzbee promised to provide legal "services . . . in the prosecution of" Thompson's claim.[19] Accordingly, because the arbitration provision is part of the broader representation contract, "consideration, or the presence of mutual obligation, is provided by the underlying contract." *Cleveland Constr., Inc.*, 359 S.W.3d at 853–54 (citation omitted). The arbitration provision is valid and not illusory.

### B.   This Case Comes Within the Arbitration Provision's Scope

The Court must now decide if this case comes within the scope of the representation contract's broad and enforceable arbitration provision. *See Halliburton*, 921 F.3d at 531 (citation omitted). It does. In analyzing the scope of the arbitration provision, the Court gives "due regard" to "the federal policy favoring arbitration" and resolves "ambiguities as to the scope" of the arbitration provision "in favor of arbitration." *Polyflow*, 993 F.3d at 303 (quotation omitted). Because the Court has held that the arbitration provision is valid at step one of the arbitrability analysis, there is now, at step two of that analysis, a "presumption" that the disputes raised here are "arbitrable unless it is clear that the arbitration [provision] has not included them." *Id.* At this second step, Thompson has the burden to show that this case falls outside the scope of the arbitration provision. *See id.* Thompson has not met that burden.

Applying "ordinary principles" of Texas contract law, *Halliburton*, 921 F.3d at 530 (citations omited), the Court starts with the text of the arbitration provision. *See*

---

[19] ECF No. 6-2 at 1.

*Polyflow*, 993 F.3d at 303. It says "Client [*i.e.*, Thompson] agrees that any dispute whatsoever arising out of this agreement, including disputes regarding fees or the proper and reasonable rendition of legal services, will be resolved by arbitration, to take place in Harris County."[20] Because the provision uses "arising out of" language, it is considered "broad." *See id.* at 303–04. And because the provision is "broad," this case need only "touch matters covered by" the representation contract to be arbitrable. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998) (quotation and citations omitted);[21] *see also, e.g.*, *Matter of Amberson*, 54 F.4th at 266 ("Under Texas law, a claim is within the scope of an arbitration agreement if the facts alleged touch matters that are covered by, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract that contains the arbitration agreement." (quotation and citations omitted)).

This case comes within the scope of the representation contract's broad arbitration provision because it "aris[es] out of" the representation contract and involves "disputes regarding fees" and Buzbee's "rendition of legal services" to Thompson.[22] The representation contract governed all relevant aspects of Buzbee's representation of Thompson in the Jones Act suit against Strategic Towing.[23] Among

---

[20] ECF No. 6-2 at 4.

[21] It is true that *Pennzoil* purported to distinguish "broad" arbitration clauses that use "arising out of" language from "narrow" arbitration clauses that use "arising out of" language. *See* 139 F.3d at 1067. But the Fifth Circuit has since deemed that classification dicta, rejected that portion of *Pennzoil* as "stand[ing] alone in [Fifth Circuit] jurisprudence," and confirmed that arbitration provisions that use "arising out of" language are "broad." *See Polyflow*, 993 F.3d at 303–04.

[22] ECF No. 6-2 at 4.

[23] *See id.* at 5 ("Client acknowledges that Attorneys have made no promises or representations that are not contained in writing in this agreement and acknowledges and agrees that this agreement cannot be modified unless agreed to by both parties, in writing.").

8

other things, the representation contract specifically describes the fees to which Buzbee would be entitled if Thompson recovered on his claims against Strategic Towing; how those fees would be calculated; and how litigation costs and expenses would be advanced.[24] All of Thompson's claims—no matter the label Thompson assigns them—arise out of Buzbee's alleged misconduct in the course of his representation of Thompson under the terms of that representation contract. The core factual allegations underlying Thompson's claims are the same: Buzbee misappropriated maintenance-and-cure payments obtained from Strategic Towing during the course of the representation; commingled those payments with operating funds; "loaned" those payments back to Thompson and members of his family at high interest rates; and inflated expenses related to that case.[25] All of these allegations "touch matters that are covered by," and "have a significant relationship to," the representation contract. *Amberson*, 54 F.4th at 266 (quotation and citations omitted).

Thompson's counterarguments fail. First, he says the arbitration provision is "narrow" even though it uses "arising out of" language.[26] But precedent forecloses that argument. *See, e.g.*, *Polyflow*, 993 F.3d at 303 (explaining that an arbitration provision is "broad" if it uses "arising out of" language and collecting cases).

Next, Thompson says the provision "expressly limits its scope to disputes regarding fees or the proper and reasonable rendition of legal services."[27] He is wrong. The provision covers "any dispute whatsoever arising out of this [representation

---

[24] *Id.* at 1–5.
[25] ECF No. 1 at ¶¶ 1, 9, 10, 24, 26, 29.
[26] ECF No. 17 at 2–3.
[27] *Id.* at 3 (quotation omitted).

9

contract], including disputes regarding fees or the proper and reasonable rendition of legal services . . . ."[28] It is not "expressly limited" in the way Thompson represents.[29]

Finally, Thompson says his claims fall outside the arbitration provision's broad scope because he could bring them "without reference to" the representation contract.[30] The Court is not convinced. "Whether a claim falls within the scope of an arbitration agreement under Texas law depends on the factual allegations of the complaint instead of the legal causes of action asserted." *Polyflow*, 993 F.3d at 304 (quotation omitted). As outlined above, the core factual allegations underlying all of Thompson's claims arise from Buzbee's alleged misconduct while representing Thompson in the suit against Strategic Towing. The representation contract governed all relevant aspects of that representation.[31] The question is whether Thompson could bring "*the same*" claims, based on the same factual allegations, "without reference to" and "completely independent of" the representation contract and the attorney-client relationship it created—not whether Thompson could bring "*similar*" claims based on a hypothetical set of facts not alleged or established. *Id.* at 304, 306 (quotation omitted). So it is immaterial that, in theory, an attorney-client relationship could have been created without any contract; this attorney-client relationship was created and governed by the representation contract. Thus, considering Thompson's allegations "within the standard that courts must indulge every reasonable presumption in favor of arbitration," *id.*, 993 F.3d at 306 (quotation omitted), the

---

[28] ECF No. 6-2 at 4.
[29] ECF No. 17 at 3.
[30] *Id.* at 4 (quotation omitted).
[31] ECF No. 6-2 at 1–5.

10

Court concludes that Thompson has not shown that his claims are "completely independent" of the representation contract, *id.* at 304 (quotation omitted).

### C. No Statute, Policy, or Other Defense Defeats Arbitrability.

Thompson fails to show that a statute, policy, or other defense defeats arbitrability. He raises two defenses—waiver and public policy. Neither persuades.

First, Buzbee did not waive the right to arbitrate by moving to strike portions of Thompson's complaint and moving to sanction Thompson's counsel after moving for a stay pending arbitration. A party waives its right to arbitrate if the party "knowingly relinquish[es] the right to arbitrate by acting inconsistent with that right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). A party acts inconsistent with the right to arbitrate if the party "substantial[ly] invo[kes] . . . . the judicial process." *Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, No. 24-10699 --- F.4th ---, 2025 WL 1739491, at *3 (5th Cir. June 24, 2025).[32] To waive the right to arbitrate by substantially invoking the judicial process, the party must "at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at *3 n.4 (quotation omitted).

Thompson does not identify any "overt act" by Buzbee that "evinces a desire to resolve" the merits of this case "through litigation rather than arbitration." *Id.*

---

[32] *Morgan* rejected the "arbitration-specific procedural rule" that "[a] party can waive its arbitration right by litigating only when its conduct has prejudiced the other side." 596 U.S. at 414. Before *Morgan*, the Fifth Circuit "embraced an arbitration waiver test rooted in prejudice." *Garcia*, 2025 WL 1739491, at *2. But the Fifth Circuit recently recognized that "*Morgan* upended" the prejudice "portion of the analysis." *Id.* The Fifth Circuit "now ask[s] whether the party 'knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right.'" *Id.* at *3 (quoting *Morgan*, 596 U.S. at 419). *Contra* Buzbee's briefing, ECF No. 22 at 6–7, the Court "no longer consider[s] prejudice[,] and . . . there is no presumption against waiver." *Garcia*, 2025 WL 1739491, at *3.

11

(quotation omitted). Buzbee moved for a stay pending arbitration before taking any other action in this case.[33] Later that same day, after moving for a stay pending arbitration, Buzbee moved to strike some of the allegations in Thompson's complaint because "they contain immaterial, impertinent and/or scandalous matters which bear no relevant or relationship to [Thompson's] claims."[34] Two weeks later, Buzbee moved to sanction Thompson's counsel for including in the complaint "multiple immaterial, impertinent and scandalous accusations" for the "improper purpose" of "harass[ing]" Buzbee and "damag[ing]" Buzbee's reputation.[35] Because these motions proceeded the motion for a stay pending arbitration, targeted only ancillary matters, and did not seek a ruling on the merits, they do not "evince[ ] a desire to resolve" the merits of this case "through litigation rather than arbitration." *Id.* (quotation omitted).

For his part, Thompson "offers no legal authority for why" Buzbee's non-merits-based motions to strike and for sanctions—filed after Buzbee moved for a stay pending arbitration at the earliest opportunity—"can be characterized as an invocation of judicial process" that suffices to show waiver. *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005). The four cases Thompson cites do not help his waiver argument. The first one, *Walker v. J.C. Bradford & Co.*, found no waiver even though the movant did more than Buzbee to invoke the judicial process: The movant made settlement attempts, issued discovery, and delayed 13 months before seeking arbitration. 938 F.2d 575, 577–79 (5th Cir. 1991). The second

---

[33] ECF No. 6.
[34] ECF No. 7 at 1.
[35] ECF No. 16 at 1.

12

one, *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, held that a party waived the right to arbitrate by not moving to arbitrate until after the district court indicated it would be ruling against the party on a key issue. 575 F.3d 476, 481–82 (5th Cir. 2009). Unlike the movant in *Petroleum Pipe*, Buzbee is not "attempt[ing] to avoid" an "anticipated unfavorable" ruling on a merits issue; Buzbee moved for a stay pending arbitration at the earliest opportunity, before any indication of any merits ruling. *Id.* at 481. Thompson's third case, *Price v. Drexel Burnham Lambert, Inc.*, does not help Thompson because the facts there are unlike the facts here: While Buzbee promptly sought a stay pending arbitration, the movant in *Price* waited 17 months to seek arbitration and did so only after moving for dismissal and for summary judgment and issuing "extensive discovery." 791 F.2d 1156, 1159, 1162 (5th Cir. 1986) (quotation omitted). Thompson's fourth and final case, *In re Mirant Corp.*, is off-point for similar reasons. 613 F.3d 584 (5th Cir. 2010). The movant there filed three motions to dismiss before moving to compel arbitration, seeking "a decision on the merits before attempting to arbitrate." *Id.* at 589 (quotation omitted). Here, by contrast, Buzbee moved for a stay pending arbitration before seeking any merits ruling.

Finally, Thompson does not identify any public-policy ground that precludes arbitration. Thompson's public-policy argument rests on one Louisiana intermediate-appellate-court opinion holding that an arbitration provision in a contract between Buzbee and a former client "was unconscionable" "[d]ue to the lack of mutuality."[36] *Lafleur v. Law Offs. of Anthony G. Buzbee, P.C.*, 2006-466, pp. 13 (La. App. 1st Cir. 3/23/07); 960 So. 2d 105, 113. The argument fails for an obvious reason: *Lafleur* applies Louisiana law; Texas law applies here.[37] Thompson makes no effort to show that the arbitration provision is void on public-policy grounds under Texas law. And in all events, as explained in section II(A) of this order and reasons, the arbitration provision is not void on mutuality or illusoriness grounds under Texas law, because it is part of the broader representation contract, which is supported by consideration.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Buzbee's motion[38] to stay proceedings pending arbitration is **GRANTED**. All proceedings are **STAYED** pending arbitration.

---

[36] ECF No. 17 at 8.
[37] *Id.* at 3 n.1 (Thompson "accept[ing]" "[f]or purposes of this motion" that the representation contract's "choice-of-law clause is enforceable and requires application of Texas law").
[38] ECF No. 6.

**IT IS FURTHER ORDERED** that the Clerk's Office is respectfully directed to administratively close this case.[39]

New Orleans, Louisiana, this 22nd day of July, 2025.

                                              BRANDON S. LONG
                                              UNITED STATES DISTRICT JUDGE

---

[39] In an argument relegated to a footnote and thus forfeited, *see Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023), Buzbee contends that the Court can decide his motions to strike and for sanctions despite the Section 3 stay. *See* ECF No. 6-1 at 3 n.3. Forfeiture aside, it is not clear that Buzbee is correct. *See, e.g.*, *Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay *the proceeding*." (emphasis added)). But even assuming the Court has the power to decide Buzbee's motions despite the Section 3 stay, the Court, exercising its discretion to control its docket, declines to decide those motions now. *See generally Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). The motions may be re-opened, if appropriate, once "arbitration has been had in accordance with the terms of" the representation contract. 9 U.S.C. § 3.